# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN LOMBARDI,<br><br>        Plaintiff,<br><br>    v.<br><br>THE GEORGE WASHINGTON UNIVERSITY,<br><br>        Defendant. | Civil No. 1:13-cv-1542 |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant George Washington University hereby respectfully moves this Court to dismiss Plaintiff John Lombardi's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Grounds for this Motion are included in the accompanying Defendant's Memorandum of Points and Authorities in Support of Its Motion to Dismiss Plaintiff's Complaint.

WHEREFORE, Defendant asks this Court to grant its Motion to Dismiss Plaintiff's Complaint.

|  |  |
|---|---|
|  | Respectfully submitted, |
| December 9, 2013 | */s/ Peter Eyre*<br>Peter Eyre (DC Bar. No. 500053)<br>Christine B. Hawes (DC Bar. No. 1007785) (D.D.C. admission pending)<br><br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>Telephone: (202) 624-2500<br>Facsimile: (202) 628-5116<br>Email: peyre@crowell.com<br>        chawes@crowell.com<br><br>*Counsel for Defendant George Washington University* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of December, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                      */s/ Peter Eyre*
                                      Peter Eyre

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN LOMBARDI,<br><br>        Plaintiff,<br><br>    v.<br><br>THE GEORGE WASHINGTON UNIVERSITY,<br><br>        Defendant. | Civil No. 1:13-cv-1542 |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff John Lombardi concedes that he was terminated by Defendant George Washington University ("GW") at a time when he had been unable to secure federal government funding for his position or the program on which he was working. Intent on trying to convert his discharge for lack of funding into a claim under Section 3730(h) of the False Claims Act, Mr. Lombardi alternatively accuses GW of fraud, illegality, and bait and switch. But, as discussed below, the allegations in the Complaint are legally insufficient to survive a motion to dismiss. The Court should dismiss Mr. Lombardi's Complaint in its entirety because he has not pled, and cannot establish, the requisite elements of his Section 3730(h) claim – *i.e.,* that he engaged in protected activity and that GW had knowledge that he had engaged in protected activity.

**FACTUAL BACKGROUND**[1]

GW employed Mr. Lombardi for six years until his termination on July 27, 2012. Complaint ("Compl.") ¶¶ 3, 5. Most recently, Mr. Lombardi served as the Director of the Center

---

[1] This motion is based on the allegations in the Complaint, without prejudice to GW. *See Whiting v. AARP,* 701 F. Supp. 2d 21, 25 (D.D.C. 2010) (allegations assumed to be true in deciding motion to dismiss).

for Preparedness and Resilience ("CPR"), which is a training and research center devoted to homeland security issues. *Id*. ¶ 3.  Until the Fall of 2011, Mr. Lombardi and his team's salaries were funded by a multi-year grant from the Department of Homeland Security and the Federal Emergency Management Agency. *Id*. ¶ 12.

Because this multi-year grant was ending, and external funding – also known as sponsored research – was critical to the ongoing operations of CPR and its staff's salaries,[2] Mr. Lombardi applied for new sources of external funding.  Specifically, on GW's behalf, Mr. Lombardi applied for the Global Anti-Terrorism Assistance ("GATA") subcontract with SAIC,[3] two Anti-Terrorism Awareness seminar programs with the Department of State, and an arrangement with a conference hosting company.  Compl. ¶¶ 12, 13.  Although Mr. Lombardi had "applied for and was awaiting" these awards, "believed that further task orders would be submitted to GW," and was confident that "GW would be considered for additional task orders," they never materialized.[4]  *Id*. ¶¶ 13, 23, 32, 40, 49.

---

[2] Mr. Lombardi admits that the lack of external funding forced him to terminate several employees in 2011.  Compl. ¶ 14.

[3] Mr. Lombardi's Complaint suggests that SAIC subcontracted two task orders to GW under GATA.  Compl. ¶ 11.  The Complaint, however, makes clear that the task orders related to an earlier contract that was concluded by September 2011.  *Id*. ¶¶ 9, 13 (admitting that, in September 2011, "the Center had applied for and was waiting the grant of a variety of new sources of funding, including the Global Anti-Terrorism Assistance subcontract with SAIC.")

[4] When describing CPR's funding, Mr. Lombardi's use of future conditional tenses is telling and understandable, given that CPR had received no external funding during the relevant time period.  *See, e.g.,* Compl. ¶ 25 ("<u>once</u> the contracts <u>were</u> secured") (emphasis added), ¶ 32 ("CPR <u>was well on its way</u> to securing a FEMA subcontract with SAIC that would satisfy the future funding requirements") (emphasis added), ¶ 33 ("FEMA – NED <u>would generate sufficient revenue</u>") (emphasis added), ¶ 41 ("between GATA and FEMA-NED, there <u>would have been</u> millions of dollars in sponsored projects") (emphasis added), ¶ 41 ("project funding for Mr. Lombardi's position <u>would be forthcoming as soon as SAIC issued task orders</u> to GW under GATA") (emphasis added).

In connection with GATA and a separate opportunity with the Federal Emergency Management Agency to provide national training, known as FEMA-NED, SAIC was a potential prime contractor and GW was pursuing both opportunities as a potential subcontractor to SAIC. Compl. ¶¶ 23, 24, 26.  During the early proposal development stage, GW identified Mr. Lombardi as the Principal Investigator for this funding opportunity.  In early July 2012, GW informed SAIC that Daniel Kaniewski, Assistant Vice President for GW's Office of Homeland Security, would be replacing Mr. Lombardi as the Principal Investigator on the FEMD-NED proposal.  *Id.* ¶ 33.

SAIC clearly understood this substitution.  According to the Complaint, the "removal of Mr. Lombardi as PI alarmed SAIC, as SAIC procurement specialists expressed concern that Mr. Kaniewski's lack of qualifications would undermine the bid." Compl. ¶ 35.  Mr. Lombardi also acknowledges that "SAIC representatives contacted Mr. Kaniewski's office to inquire why Mr. Kaniewski had substituted himself for Mr. Lombardi at the last moment." *Id.*  GW's notification about the substitution of Mr. Kaniewski for Mr. Lombardi took place before the deadline for submission of SAIC's proposal to the federal government.  *Id.* ¶ 34.  In other words, <u>before GW submitted its final proposal to SAIC</u> – and before SAIC submitted its final proposal to the government – GW advised SAIC that Mr. Lombardi would not be acting as a Principal Investigator.[5]  *Id.* ¶¶ 34, 35, 37.

SAIC, for its part, has chosen not to issue any contracts or task orders to GW after Mr. Kaniewski was substituted for Mr. Lombardi as the Principal Investigator (which was clearly

---

[5]  Given that Mr. Lombardi admits that GW notified SAIC before the submission of its proposal, it is not clear why Mr. Lombardi is alleging that the substitution was "deceitful," "without notice to SAIC," and "without SAIC's approval." Compl. ¶¶ 34, 35.  Before the submission of the GW proposal, SAIC was fully informed of the substitution and sought further information from GW.  *Id*.  That sort of disclosure and transparency is the antithesis of deceit.

communicated to SAIC).  Compl. ¶ 49.  GW did not request – or receive – payment from SAIC or the government and there was no performance by Mr. Kaniewski in lieu of Mr. Lombardi.  *Id.*  GW terminated Mr. Lombardi on July 27, 2012.  *Id*. ¶ 3.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).  The Court is not required to accept as true "unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation."  *Michigan Gambling Opposition (MichGO) v. Norton*, 477 F. Supp. 2d 1, 5 (D.D.C. 2007) (quoting *Marshall Cnty. Health Care Auth. V. Shalala*, 988 F.2d 1221, 1225 (D.C. Cir. 1993)).  Mere recitals of the elements of a claim supported by conclusory statements are wholly insufficient to avoid dismissal of the claim.  *Iqbal*, 129 S. Ct. at 1949-50.

Dismissal is also appropriate when, "taking all the material allegations of the complaint as admitted and construing them in the plaintiff's favor," the plaintiff's complaint could not possibly entitle him to relief.  *Taylor v. F.D.I.C.*, 132 F.3d 753, 761 (D.C. Cir. 1997).  The same result is warranted when a plaintiff "alleg[es] facts that render success on the merits impossible."  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000).

## ARGUMENT

Mr. Lombardi's Complaint consists of a single cause of action – a claim of retaliation in violation of Section 3730(h) of the civil False Claims Act.  To establish a *prima facie* case of retaliation pursuant to 31 U.S.C. § 3730(h), Mr. Lombardi must allege, in part, facts sufficient to show that: (1) he took acts in furtherance of a *qui tam* suit (*i.e.,* engaged in protected activity);

4

<u>and</u> (2) he was discriminated against "because of" that activity.  *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998).  Mr. Lombardi's Complaint meets neither of these requirements.  The Complaint should therefore be dismissed with prejudice.

### A. Mr. Lombardi's Section 3730(h) Claim Should be Dismissed Because He Did Not Engage in Protected Activity.

To establish the requisite protected activity element of his claim, Mr. Lombardi must allege that he engaged in activity that "reasonably could lead to a viable False Claims Act case." *Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 67 (D.C. Cir. 2008) (quoting *Yesudian*).  To sufficiently plead protected activity, a plaintiff must demonstrate good faith and an <u>objectively</u> reasonable basis for his belief that he was investigating fraud.  *Id.*  In other words, protected activity is not demonstrated where a plaintiff subjectively believes there has been fraud but there is no objectively reasonably basis for that belief.  *Id.*; *see also Mann v. Heckler & Koch Def., Inc.*, 630 F.3d 338, 344 (4th Cir. 2010) (standard excludes situations where "an employee … fabricates a tale of fraud to extract concessions from the employer, or … just imagines fraud but lacks proof") (quoting *Neal v. Honeywell, Inc.*, 33 F.3d 860, 864 (7th Cir. 1994)).  For each of the three key reasons that follow, Mr. Lombardi's inability to demonstrate an objectively reasonable basis for his belief that he was investigating fraud compels the dismissal of his Section 3730(h) claim.

<u>First</u>, the basis of a False Claims Act claim is <u>fraud</u>.  *See, e.g., United States ex rel. Brown v. Aramark Corp.*, 591 F. Supp. 2d 68, 73 (D.D.C. 2008); *Sanderson v. HCA – The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006) (the making of a false claim is "the *sine qua non* of a False Claims Act violation").  Where, as here, it is plain from the allegations in the Complaint that there was no fraud and no claim for payment, a plaintiff's investigation is not

protected activity, because there was no objectively reasonable possibility of False Claims Act litigation. The Complaint must, therefore, be dismissed.

Several cases illustrate this concept. For example, in *Sharma v. District of Columbia*, the Court noted that, "[i]n order to properly plead a retaliation claim under the FCA, a plaintiff must allege that there was a violation of the statute, *i.e.*, the presentment of a false or fraudulent claim to the federal government." 881 F. Supp. 2d 138, 142 (D.D.C. 2012). The Court dismissed Sharma's claim that he had been "pressured to approve contracts that were fraudulent, wasteful, and violated D.C. and federal laws and regulations" as insufficient, because he failed to allege that the defendant "presented a false or fraudulent claim to the Federal Government for payment." *Id.* The fact that Sharma's claims "involve[d] federal money" and "mention[ed] projects funded by Federal money on which he claim[ed] that [the District] violated the False Claims Act" was not sufficient to demonstrate that the defendant presented a fraudulent claim for payment. *Id*.

Like the plaintiff in *Sharma*, Mr. Lombardi has not alleged that GW submitted any false claim to the government or the prime contractor, SAIC. Indeed, Mr. Lombardi's Complaint makes clear that there was no fraud at all. GW informed SAIC that Mr. Kaniewski would be replacing Mr. Lombardi as the Principal Investigator <u>before the deadline for GW's proposal submission</u> and before SAIC submitted its final proposal to the government. Compl. ¶¶ 33, 34, 37. This notification makes the possibility of fraud and deceit objectively unreasonable. *See, e.g., Mann*, 630 F. 3d at 345 (finding that the plaintiff had not engaged in protected activity because the defendant's conduct was "open and straightforward," and that the defendant "took care to point … out" to the government the elements of its bid that the plaintiff wrongly considered fraudulent; hence, there was no fraud, and "based on the facts known to [the plaintiff]

6

at the time of his conduct, there was no reasonable possibility that his efforts could lead to a viable FCA action"). Furthermore, SAIC has not issued any contracts or task orders to GW since Mr. Kaniewski was made Principal Investigator.[6] Compl. ¶ 49. Thus, there has been no performance by Mr. Kaniewski and GW has not made a claim for payment from SAIC or the government. *Id.; see also United States ex rel. Kennedy v. Aventis Pharm., Inc.*, 512 F. Supp. 2d 1158, 1168 (N.D. Ill. 2007) (dismissing retaliation claim because "allegations regarding improper use of company funds and the creation of false entertainment invoices do not support a FCA retaliation claim, as there is no indication in [plaintiff's] complaint that these practices resulted in fraud on the government").

Second, Mr. Lombardi's Complaint is devoid of any facts to suggest that his alleged complaints about being replaced by Mr. Kaniewski as Principal Investigator could have reasonably led to litigation under the False Claims Act.[7] To the contrary, his Complaint contains

---

[6] The False Claims Act was amended in 2009 to include "efforts to stop [one] or more violations of [the False Claims Act]." 31 U.S.C. § 3730(h). To the extent Mr. Lombardi is alleging that his complaints were protected activity because they were "efforts to stop" a False Claims Act violation that had not yet occurred, his allegations are also insufficient. Mr. Lombardi must still establish a sufficient connection between his complaints and fraudulent conduct by GW. *See, e.g., Young v. CHS Middle East, LLC*, No. 1:13-cv-000585, 2013 WL 4498680, at *8 (E.D. Va. Aug. 20, 2013) (dismissing the plaintiff's complaint and noting that, following the False Claims Act amendments, the requirement that protected activity concern a "false claim" remains) (citing *Sharma*, 881 F. Supp. 2d at 142). Furthermore, as explained above, there could not have been a violation of the False Claims Act because of GW's full disclosure to SAIC, so any effort by Mr. Lombardi to try to "stop" a violation would not have been objectively reasonable and would not constitute protected activity.

[7] Mr. Lombardi alleges that GW engaged in a "bait and switch" by substituting Mr. Kaniewski as the Principal Investigator. Compl. ¶ 43. A bait and switch requires a knowingly false statement to the government or prime contractor in order to be awarded a contract, and then making an unauthorized change in key personnel during performance. *See, e.g., U.S. ex rel. Sanchez v. Abuabara*, No. 10-61673-CIV, 2012 WL 5193415 at *6 (S.D. Fla. Oct. 19, 2012). Mr. Lombardi's Complaint does not contain any facts to demonstrate a bait and switch. Mr. Lombardi admits that Mr. Kaniewski was named as the Principal Investigator in the proposal that GW submitted to SAIC. Compl. ¶ 34 (noting that Mr. Kaniewski was listed as PI "just days

(continued…)

admissions demonstrating why there was no objectively reasonable belief that FCA violations have or could have occurred.  The facts alleged by Mr. Lombardi related to concerns about his replacement, not fraud.  Compl. ¶ 31 (noting that Plaintiff "explained that Mr. Kaniewski was replacing him without prime contract or governmental approval and that he was interfering with his work as designated PI").  Where no amount of discovery could uncover a violation of the False Claims Act, a plaintiff's actions cannot constitute protected activity.  *Hoyte*, 518 F.3d at 69 (dismissing complaint where the plaintiff could not show fraud on the government and "no amount of discovery could cure this defect").[8]

Third, even if Mr. Lombardi is attempting to allege that there was some sort of contractual dispute between GW and SAIC – because SAIC was hoping that Mr. Lombardi would be available as a Principal Investigator, for example – investigations into these sort of matters are not protected activity under the False Claims Act.  *See Martin v. Arc of D.C.*, 541 F. Supp. 2d 77, 84 (D.D.C. 2008) (where complaint contains allegations of failure to comply with funding requirements or contractual violations, rather than a false claim for payment or approval by the government, it must be dismissed); *see also Mann*, 630 F.3d at 347 (plaintiff's

---

(continued…)

before the submission deadline").  Thus, the proposals contained only truthful statements to SAIC, and there was no "bait."  Furthermore, because no task orders have been issued under these subcontracts, there has been no performance by Mr. Kaniewski, and no claims for payment have been submitted to SAIC or to the government, there was no "switch."

[8]   To the extent Mr. Lombardi is alleging that he engaged in protected activity related to the GATA subcontract, the Complaint similarly fails to state a claim.  *See* Compl. ¶¶ 21-25.  Taking Mr. Lombardi's allegations as fact for purposes of this motion, they portray merely an internal dispute about which office would get credit for generating "new sources of funding for GW,' *id.* ¶ 22, and do not assert that any false statements were actually made to SAIC or the federal government, or that any false claims were submitted for payment.  In short, Mr. Lombardi's allegations fail to state a valid claim of retaliation with respect to GATA, because he has not alleged any protected activity that could reasonably lead to a viable False Claims Act claim.

investigative activities into possible contractual violations were not protected because they had no reasonable possibility of uncovering fraud).

Mr. Lombardi's misguided theory should be put in context. His interpretation of the law would mean that a government contractor at any tier could run afoul of the False Claims Act if it makes a key personnel or Principal Investigator substitution, even if it provides appropriate notification. Acceptance of this theory could essentially convert government contractors' routine staffing and personnel changes into a false claim overnight, and render any employee disadvantaged by such routine changes a retaliation victim under Section 3730(h). Such a construction would both distort and wholly undermine Congress' singular focus on eliminating fraud in federal procurements.

In sum, Mr. Lombardi's failure to establish that he engaged in any protected activity under the False Claims Act compels the dismissal of his Section 3730(h) claim.

### B. Mr. Lombardi's Section 3730(h) Claim Should be Dismissed Because GW Had No Knowledge That His Activities Were in Furtherance of a Potential *Qui Tam* Lawsuit.

Mr. Lombardi's Complaint should be dismissed for a second and independent reason. It fails to allege facts sufficient to establish that GW knew Mr. Lombardi's queries related to being replaced as Principal Investigator could reasonably lead to False Claims Act litigation. To satisfy the "knowledge" requirement under Section 3730(h), Mr. Lombardi must allege that he: (1) expressly told GW that he intended to file a *qui tam* lawsuit, or (2) engaged in other conduct, outside the scope of his employment responsibilities, that a reasonable factfinder could conclude would put GW on notice of the reasonable possibility of litigation. *U.S. ex rel. Schweizer v. Oce NV*, 677 F.3d 1228, 1239 (D.C. Cir. 2012).

Mr. Lombardi makes no such allegations in the Complaint. He asserts only that, during May 2012, he questioned "Mr. Kaniewski's efforts to replace him" as Principal Investigator, that he felt as though GW was not properly supporting Mr. Lombardi and CPR, and that he disagreed with how GW prioritized its resources. Compl. ¶¶ 29-31, 37. Mr. Lombardi does not allege that he told anyone at GW that a fraudulent statement had been made, that a false claim had been submitted, or that he was investigating fraud. *Aramark Corp.*, 591 F. Supp. 2d at 77 (noting that, for the "knowledge" element of a False Claims Act retaliation claim, "[u]nless the employer is aware that the employee is investigating fraud, ... the employer could not possess the retaliatory intent necessary to establish a violation of § 3730(h)") (quoting *Yesudian*, 153 F.3d at 744). While Mr. Lombardi asserts that, in July 2012, he told GW that "Mr. Kaniewski now had … misled SAIC," Compl. ¶ 37, his other allegations prove it had not: GW expressly told SAIC that Mr. Kaniewski would be the Principal Investigator instead of Mr. Lombardi. *Id.* ¶¶ 34-35. In other words, regardless of Mr. Lombardi's subjective beliefs, he has failed to allege facts to establish that he put GW on notice of the reasonable possibility of litigation under the False Claims Act. *See Sparrow*, 216 F.3d at 1116 (dismissal required when allegations in Complaint undermine possibility of prevailing).

Against this backdrop, and for this reason too, Mr. Lombardi cannot establish the mandatory knowledge element of his claim, and his Complaint should be dismissed..

## CONCLUSION

For the reasons stated above, the Court should dismiss Lombardi's Complaint with prejudice.

                                            Respectfully submitted,

December 9, 2013                       */s/ Peter Eyre*
                                            Peter Eyre (DC Bar. No. 500053)
                                            Christine B. Hawes (DC Bar. No. 1007785) (D.D.C.
                                                  admission pending)

                                            CROWELL & MORING LLP
                                            1001 Pennsylvania Avenue, NW
                                            Washington, DC 20004
                                            Telephone: (202) 624-2500
                                            Facsimile: (202) 628-5116
                                            Email: peyre@crowell.com
                                                    chawes@crowell.com

                                            *Counsel for Defendant George Washington University*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of December, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                    */s/ Peter Eyre*
                                                    Peter Eyre